—————————————

No. 13-1215
—————————————

**IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT**
—————————————

**MARIE M. McCRAY**,

*Plaintiff-Appellant*,

**v.**

**MARYLAND DEPARTMENT OF TRANSPORTATION**,
**MARYLAND TRANSIT ADMINISTRATION**,

*Defendants-Appellees.*
—————————————

On Appeal from the United States District Court
for the District of Maryland
(Ellen L. Hollander, District Judge)
—————————————

**BRIEF OF APPELLEES**
—————————————

DOUGLAS F. GANSLER
Attorney General of Maryland

JENNIFER L. KATZ
Assistant Attorney General
office of the Attorney General
200 St. Paul Place, 20th Floor
Baltimore, Maryland 21202
Tel. 410-576-7005

ERIC S. HARTWIG
Assistant Attorney General
Office of the Attorney General
Maryland Transit Administration
6 St. Paul Street, 12th Floor
Baltimore, Maryland 21202
Tel. 410-767-6616

July 12, 2013

Attorneys for Appellees

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case. In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form. Counsel has a continuing duty to update this information.

No. 13-1215    Caption: Marie McCray v. Maryland Department of Transportation, MTA

Pursuant to FRAP 26.1 and Local Rule 26.1,

Maryland Department of Transportation, Maryland Transit Administration
(name of party/amicus)


who is _____appellee_____, makes the following disclosure:
          (appellant/appellee/amicus)


1.    Is party/amicus a publicly held corporation or other publicly held entity?   ☐ YES ☑ NO


2.    Does party/amicus have any parent corporations?   ☐ YES ☑ NO
      If yes, identify all parent corporations, including grandparent and great-grandparent corporations:



3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?   ☐ YES ☑ NO
      If yes, identify all such owners:


- 1 -

4.  Is there any other publicly held corporation or other publicly held entity that has a direct
    financial interest in the outcome of the litigation (Local Rule 26.1(b))?    ☐YES ☑NO
    If yes, identify entity and nature of interest:

5.  Is party a trade association? (amici curiae do not complete this question)  ☐YES ☑NO
    If yes, identify any publicly held member whose stock or equity value could be affected
    substantially by the outcome of the proceeding or whose claims the trade association is
    pursuing in a representative capacity, or state that there is no such member:

6.  Does this case arise out of a bankruptcy proceeding?    ☐YES ☑NO
    If yes, identify any trustee and the members of any creditors' committee:

Signature: _____    Date: __2/21/13__

Counsel for: __Maryland Dept of Trans., MTA__

## CERTIFICATE OF SERVICE
****************************

I certify that on ____2/21/13____ the foregoing document was served on all parties or their
counsel of record through the CM/ECF system if they are registered users or, if they are not, by
serving a true and correct copy at the addresses listed below:

_____          __2/21/13__
(signature)                          (date)

# TABLE OF CONTENTS

JURISDICTIONAL STATEMENT .........................................................1

ISSUES PRESENTED FOR REVIEW ....................................................2

STATEMENT OF THE CASE...............................................................2

STATEMENT OF FACTS ....................................................................4

SUMMARY OF ARGUMENT .............................................................10

ARGUMENT ....................................................................................11

    I.    STANDARD OF REVIEW ............................................................11

    II.    THE DISTRICT COURT PROPERLY GRANTED SUMMARY JUDGMENT ON LEGISLATIVE IMMUNITY GROUNDS BECAUSE DEFENDANTS WERE ACTING IN A LEGISLATIVE CAPACITY THROUGH THEIR INVOLVEMENT IN THE FISCAL YEAR 2009 BUDGET PROCESS....................12

    III.    THE DISTRICT COURT ACTED WITHIN ITS DISCRETION IN GRANTING SUMMARY JUDGMENT ON LEGISLATIVE IMMUNITY GROUNDS WITHOUT PERMITTING FURTHER DISCOVERY. ..........................................23

    IV.    SOVEREIGN IMMUNITY BARS THE PLAINTIFF'S AGE AND DISABILITY DISCRIMINATION CLAIMS. ..........................................................26

    V.    THE PLAINTIFF'S CLAIMS CANNOT SURVIVE SUMMARY JUDGMENT BECAUSE SHE CANNOT SHOW THAT THE FISCAL YEAR 2009 BUDGET CUTS WERE MERE PRETEXT FOR DISCRIMINATION. ...................28

CONCLUSION .................................................................................30

# TABLE OF AUTHORITIES

## Cases

*Bacon v. City of Richmond*, 475 F.3d 633 (4th Cir. 2007) ................................11, 12

*Baker v. Baltimore*, 894 F.2d 697 (4th Cir. 1990) ..........................13, 15, 18, 20, 24

*Baraka v. McGreevey*, 481 F.3d 187 (3d Cir. 2007) ................................................18

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ....................................................28

*Berkley v. Common Council of the City of Charleston*,
    63 F.3d 295 (4th Cir.1995) ................................................................................13

*Board of Trs. of the Univ. of Alabama v. Garrett*, 531 U.S. 356 (2001)................27

*Bogan v. Scott-Harris*, 523 U.S. 44 (1998) ....................... 12, 14, 15, 16, 18, 20, 25

*Bryant v. Bell Atl., Inc.*, 288 F.3d 124 (4th Cir. 2002) ......................................11, 22

*Bryant v. Jones*, 575 F.3d 1281 (11th Cir. 2009).....................................................18

*Butnick v. McLean*, 76 F.3d 611 (4th Cir. 1996) ......................................................13

*Constantine v. Rectors & Visitors of George Mason Univ.*,
    411 F.3d 474 (4th Cir. 2005) ......................................................................26, 27

*EEOC v. Washington Suburban Sanitary Comm'n*,
    631 F.3d 174 (4th Cir. 2011) .....................................................14, 15, 19, 20, 24

*Ennis v. National Ass'n of Bus. & Educ. Radio, Inc.*,
    53 F.3d 55 (4th Cir. 1995) .................................................................................29

*Henson v. Liggett Group, Inc.*, 61 F.3d 270 (4th Cir. 1995) ...................................29

*Ingle v. Yelton*, 439 F.3d 191 (4th Cir. 2006) .........................................................12

*Judy v. Schaefer*, 331 Md. 239 (1993).............................................................4, 5, 16

ii

*Karpel v. Inova Health Sys. Servs.*, 134 F.3d 1222 (4th Cir. 1998) ......................22

*Kensington Vol. Fire Dep't, Inc. v. Montgomery County*,
684 F.3d 462 (4th Cir. 2012) ............................................... 11, 13, 15, 16, 17, 23

*Kimel v. Florida Board of Regents*, 528 U.S. 62 (2000) ........................................27

*McDonnell-Douglas v. Green*, 411 U.S. 792 (1973) ................................................28

*MINPECO, S.A. v. Conticommodity Servs., Inc.*,
844 F.2d 856, 859 (D.C. Cir. 1988) ...................................................................20

*MM. ex rel. DM v. School Dist. of Greenville County*,
303 F.3d 523 (4th Cir. 2002) .......................................................................12, 26

*Monumental Paving & Excavating, Inc. v. Pennsylvania Mfrs.' Ass'n Ins. Co.*,
176 F.3d 794 (4th Cir. 1999) ..............................................................................11

*Norfolk S. Ry. Co. v. City of Alexandria*, 608 F.3d 150 (4th Cir. 2010)..................11

*Regents of Univ. of California v. Doe*, 519 U.S. 425 (1997)...................................26

*Schlitz v. Virginia*, 854 F.2d 43 (4th Cir. 1988)....................................13, 20, 21, 23

*Staub v. Proctor Hospital*, 131 S. Ct. 1186 (2011)...................................................21

*Strag v. Board of Trs., Craven Cmty. Coll.*,
55 F.3d 943 (4th Cir. 1995) ................................................................................26

*Supreme Court of Virginia v. Consumers Union, Inc.*, 446 U.S. 719 (1980)..........13

*Tenney v. Brandhove*, 341 U.S. 367 (1951)...............................................12, 14, 22

*Thompson v. Maryland Dep't of Transp.*,
No. 09-297, 2010 U.S. Dist. LEXIS 58268 (D. Md. 2010)...............................26

*United States v. O'Brien*, 391 U.S. 367 (1968) ......................................................16

*Workers' Compensation Comm'n v. Driver*, 336 Md. 105 (1994)...................16, 20

## Statutes

28 U.S.C. § 1291 ................................................................................1

28 U.S.C. § 1331 ................................................................................1

28 U.S.C. § 1343(a)(3) .......................................................................1

29 U.S.C. §§ 621 – 634 ......................................................................1

42 U.S.C. §§ 1201 – 12113 ................................................................1

42 U.S.C. §§ 2003e – 2003e – 17 ......................................................1

Md. Code Ann., State. Fin. & Proc. § 7-213(a) ...........................4, 5, 16

Md. Code Ann., State. Fin. & Proc. § 7-213(b) ................................4

Md. Code Ann., Transp. § 2-101 ..................................................1, 6

Md. Code Ann., Transp. § 2-102(a) ..................................................6

Md. Code Ann., Transp. § 2-103(a) ..................................................6

Md. Code Ann., Transp. § 2-107 ......................................................1

Md. Code Ann., Transp. § 2-107(a)(3) ..........................................1, 6

Md. Code Ann., Transp. § 7-204(b) ..................................................1

## Rules

Fed. R. Civ. P. 56(d) ...............................................................10, 12, 23

## Constitutions

Md. Const. art. III..................................................................................4

Md. Const. art. XII................................................................................4

## Opinions

76 Md. Op. Atty. Gen. 330, 1991 WL 626528 (Sept. 5 1991) ..................................5

## JURISDICTIONAL STATEMENT

After the position she occupied was eliminated from the State of Maryland's fiscal year 2009 budget as part of extensive budget cuts proposed by the Governor of Maryland and approved by the Maryland Board of Public Works, the plaintiff-appellant brought this employment discrimination action under Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. §§ 2000e to 2000e-17, the Age Discrimination in Employment Act of 1967 ("ADEA"), as amended, 29 U.S.C. §§ 621 to 634, and the Americans with Disabilities Act of 1990 ("ADA"), as amended, 42 U.S.C. §§ 12101 to 12113.   The district court had subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1343(a)(3).  In an order entered on January 16, 2013, the district court granted summary judgment in favor of the defendant State agencies[1] and denied the plaintiff's Rule 56(d) motion for extension of discovery.   On February 14, 2013, the plaintiff timely noted her appeal.  This Court has jurisdiction under 28 U.S.C. § 1291 to review the district court's final order.

---

[1]   The plaintiff's complaint named as the defendant "Maryland Department of Transportation, Maryland Transit Administration."   (J.A. 5.)   The Maryland Department of Transportation ("MDOT") is a principal department of Maryland State government.   Md. Code Ann., Transp. § 2-101.   The Maryland Transit Administration ("MTA") is a unit of MDOT.   *Id.* § 2-107(a)(3).   The MTA is statutorily authorized to sue and be sued in its own name.   *Id.* § 7-204(b).

## ISSUE PRESENTED FOR REVIEW

Did the district court correctly determine that legislative immunity precludes the plaintiff's employment discrimination claims arising from the elimination of her position as part of the extensive budget cuts proposed by the Governor of Maryland and approved by the Maryland Board of Public Works to help close a $432 million budget gap, where the defendant State agencies, acting at the Governor's behest, played an integral role in that budget process by recommending which job functions could be eliminated?

## STATEMENT OF THE CASE

The plaintiff, Marie McCray, challenges the district court's grant of summary judgment on her employment discrimination claims, which the court found were barred by legislative immunity because the elimination of the State job she occupied was part of a substantial budget reduction measure that the Governor proposed and the Maryland Board of Public Works (the "Board") approved to address the State's extensive budget shortfall.

In October 2008, as part of its efforts to address a fiscal crisis facing the State government, the Board voted to eliminate funding for the job position held by Ms. McCray at the Maryland Transit Administration ("MTA").  (J.A. 23, 43.) Subsequently, Ms. McCray filed a charge of discrimination with the United States Equal Employment Opportunity Commission ("EEOC").  (J.A. 59-60.)   After

2

receiving a Right to Sue letter, Ms. McCray filed on December 27, 2011 this suit against the Maryland Department of Transportation ("MDOT") and one of its modal agencies, MTA, alleging that the elimination of her employment position constituted unlawful discrimination based on age, sex, race, and disability. (J.A. 5-18.)

The two State agencies filed a motion to dismiss or, in the alternative, for summary judgment asserting, *inter alia*, that the Board's budgetary action is protected from judicial challenge by legislative immunity. (J.A. 19-20.) Ms. McCray responded by arguing that the individual State officials who recommended positions for elimination from the State budget are not protected by legislative immunity and that she should be permitted to conduct discovery into the actions of these individuals. (J.A. 109-10, 122.)

On January 16, 2013, the district court issued an Order and Memorandum Opinion, in which the court determined to treat the defendants' motion as one for summary judgment in light of both parties' submission of documentary evidence (J.A. 109) and proceeded to grant summary judgment in favor of the defendants as to all claims (J.A. 4). The district court concluded that the Board's elimination of the State job occupied by Ms. McCray was a legislative act protected by absolute legislative immunity. (J.A. 115-22.) Applying Supreme Court and Fourth Circuit precedent, the court ruled that the protection from suit afforded by legislative

3

immunity extended to executive branch agencies and officials who assisted in recommending job functions for elimination. (J.A. 122-30.) The district court denied Ms. McCray's request for additional time to take discovery under Fed. R. Civ. P. 56(d) on the ground that the plaintiff failed to show that the discovery sought would create an issue of material fact. (J.A. 111-14.)

## STATEMENT OF FACTS

The Maryland Constitution requires that the State balance its budget. Md. Const. art. III, § 52(5a). Generally, the State's budget for each fiscal year is established by legislation proposed by the Governor and enacted by the Maryland General Assembly. *Id.*, §52, subsections (3) – (6). Among various other items, the budget includes appropriations "for the salaries payable by the State" to employees. *Id.*, subsection (4). To "allow for greater flexibility between legislative sessions for the administration of the budget," *Judy v. Schaefer*, 331 Md. 239, 254 (1993), the General Assembly has authorized the Governor to determine if any budgeted appropriations are unnecessary and to reduce such appropriations accordingly, subject to the approval of the Maryland Board of Public Works, Md. Code Ann., State Fin. & Proc. § 7-213(a); *see id.* § 7-213(b) (precluding reduction of appropriations for categories of expenditure not relevant here). The Board consists of three State constitutional officers: the Governor, the State Comptroller, and the State Treasurer. Md. Const. art. XII, § 1. The Board's

responsibilities include overseeing all public works in the State of Maryland and other duties as prescribed by law.

Heading into its 2009 fiscal year, the State was facing a projected budget deficit of more than $430 million. (J.A. 23.) To remedy the looming fiscal crisis, the Governor asked State agencies "to identify cuts of up to five percent in their budgets." (*Id.*) Ultimately, in October 2008, the Governor proposed approximately $345 million in budget reductions, including the elimination of funding for 830 State jobs. (*Id.*) The Board approved the measure. (*Id.*)

Upon the exercise of this statutory authority by the Governor and the Board, the elimination of funding for a State position results in the loss of that position by operation of law. Both practically and legally, it is equivalent to the Governor omitting the position from the annual budget bill or the General Assembly striking the appropriation from the budget bill. *See Judy v. Schaefer*, 331 Md. at 258-61; 76 Md. Op. Atty. Gen. 330, 1991 WL 626528, at *1, *5 (Sept. 5 1991). That is, as construed by Maryland's highest court, the statutory budget reduction process under State Finance & Procurement § 7-213(a) "mirrors" the constitutional process by which the Governor and the General Assembly establish the annual budget. *Judy v. Schaefer*, 331 Md. at 261.

The budget reduction measure proposed by the Governor and approved by the Board eliminated 63 positions within MTA. (J.A. 26). MTA is responsible for

5

administering the mass transit system in the Baltimore metropolitan area and other areas of the State (J.A. 100), and is one of nine statutorily-created units within MDOT.  Md. Code Ann., Transp. § 2-107(a)(3).  MDOT is a principal department of Maryland State government.  *Id*. § 2-101.  The Secretary of MDOT, who is appointed by the Governor of Maryland with the advice and consent of the State Senate, *id.* § 2-102(a), is responsible for the budgets of MDOT and each unit within the department, including MTA.  *Id.* § 2-103(a).

Of the 63 MTA positions that the Board approved for elimination, 20 were occupied at the time they were eliminated.  (J.A. 26.)  After a senior-management-level review of potential cost saving measures, MDOT recommended these 20 job functions for elimination.  (J.A. 25-26, 33-34.)  According to the Director of Human Resources of MDOT, Judith Slater, "MDOT directed its modal administrations to identify cost saving measures, including job position reductions, to remedy a significant shortfall in the State Transportation Trust Fund."  (J.A. 25-26.)  In his sworn affidavit, MTA Deputy Administrator Henry Kay stated that, to "avoid affecting transportation service," MTA "focused on cost savings in management and administrative functions."  (J.A. 34.)  Kay, in consultation with Michael Deets, the acting Director of Service Development for MTA, "identified for potential elimination" a job function performed by a Transportation

Engineering Technician, which was filled at the time by the plaintiff, Marie McCray. (*Id.*)

According to Ms. Slater, she and the Administrator and another Deputy Administrator of MTA reviewed each position that senior management had identified for potential elimination and "discussed how the job functions could be eliminated or consolidated with other positions." (J.A. 26.) They identified for elimination 23 occupied positions, 20 of which were contained in MDOT's final list that the department submitted to the Maryland Department of Budget and Management. (*Id.*) The Governor submitted to the Board these 20 positions for elimination, and they were among the 830 State jobs that the Board approved for elimination. (*Id.*) Of the 20 MTA employees whose positions were eliminated, twelve were male and eight were female; nine were white, nine were African American, one was multi-racial, and one did not report a racial classification. (J.A. 26, 85, 102-03.)

On October 15, 2008, the same day the position she occupied was abolished, Ms. McCray received a memorandum from MDOT Secretary, John D. Porcari, informing her that the Board had approved the elimination of her job position effective October 30, 2008. (J.A. 27.) Ms. McCray had worked at MTA since 1971 and held several different positions during her employment there. (J.A. 7.) Since the late 1980s, her principal duties had included "the compilation and

7

preparation of a monthly and then annual report of rider usage for [MTA] trains and buses." (J.A. 8, ¶ 8.) In 2008, however, these duties were reassigned to a consultant. (J.A. 10.) According to her own complaint, the reassignment of duties had left Ms. McCray "without significant work to perform" for the remainder of 2008 (J.A. 10, ¶ 20), including the period when MDOT and MTA officials were reviewing positions to determine which of them could be eliminated as unnecessary (J.A. 25-26).

During the time she was employed at MTA, Ms. McCray was diagnosed as a diabetic. (J.A. 8.) Although she was able to manage the condition with medication and eventually with insulin injections through 2007, in June 2007, one of her coworkers found her "passed out on the floor near [her] work station." (J.A. 8, ¶ 12.) Ms. McCray was transported by ambulance to the hospital. (J.A. 8-9.) A week later, she returned with a note from her doctor clearing her to return to work. (J.A. 9.) According to Ms. McCray, Mr. Deets, who at the time was the Deputy Director of the Office of Service Development, "suddenly took to confronting [her] demanding to know whether she was 'fit' to return to work." (J.A. 9, ¶ 14.) Ms. McCray further alleges that Mr. Deets and a human resources official "insisted [she] submit to an examination by the State's medical officers at Concerta regarding her fitness." (J.A. 9, ¶ 15.) Ms. McCray initially refused this request when it was made orally, but she eventually complied after receiving a written

8

request. (J.A. 10.) Although the medical staff at Concerta "affirmed her fitness to resume her duties," Ms. McCray alleges that "Mr. Deets still continued to plague [her] with his questions whether she was fit to resume her duties." (J.A. 10, ¶ 18.)

After being notified that the position she occupied was eliminated, Ms. McCray filed a charge with the EEOC on June 29, 2009, alleging age-based discrimination. (J.A. 59.) On September 20, 2010, Ms. McCray filed an amended charge, alleging discrimination on the basis of age, race, gender, and disability. (J.A. 60.) Both charges are limited to the circumstances surrounding the elimination of Ms. McCray's position as a result of the Board's approval of the Governor's budget reductions. On September 26, 2011, after an investigation revealed no discrimination by MDOT and MTA, the EEOC issued Ms. McCray a right to sue letter. (J.A. 61.) She then filed suit in the district court, alleging employment discrimination based on race, gender, disability, and age. (J.A. 11-17.) The complaint sought compensatory damages of $400,000 and injunctive relief "to afford Plaintiff the opportunity to restore her career in state service and reclaim her former position . . . ." (J.A. 14, 17.)

Defendants moved to dismiss the complaint or, in the alternative, for summary judgment, on the grounds that (1) legislative immunity bars Ms. McCray's claims because her position was abolished in connection with a budgetary action; (2) she failed to timely present certain claims of discrimination

to the EEOC; and (3) the complaint failed to state facts adequate to support her claims of discrimination. (J.A. 19-22.) Ms. McCray opposed the motion and requested additional discovery under Federal Rule of Civil Procedure 56(d).

The district court elected to treat the defendants' motion as one for summary judgment and granted the motion on legislative immunity grounds. First, the district court concluded that the fiscal year 2009 budget cuts were protected by legislative immunity. (J.A. 114-21.) Next, the court determined that MDOT and MTA could invoke legislative immunity both because the plaintiff "cannot circumvent absolute legislative immunity on the ground that a supervisor involved in making recommendations for the FY09 budget harbored discriminatory intent," and because MDOT, MTA, and their officials engaged in a legislative activity by making budget proposals and played an integral role in the budget process. (J.A. 121-26.) The court denied Ms. McCray's request for more time to conduct discovery because "the discovery identified by [her] as essential to her case"— which involved "the motives of individual employees within the MTA and the MDOT in selecting certain positions for elimination"—was "not material to whether defendants are entitled to legislative immunity." (J.A. 110.)

## SUMMARY OF ARGUMENT

The district court correctly held that legislative immunity bars this suit against the defendant State agencies and their officials for their roles in

recommending State positions for elimination as part of the fiscal year 2009 budget cuts.  Under *Kensington Vol. Fire Dep't, Inc. v. Montgomery County*, 684 F.3d 462 (4th Cir. 2012), both legislators and those who propose, assist, or advocate for budgetary action are entitled to absolute immunity for their actions while engaged in legislative, budgetary functions.  The district court also acted well within its discretion in denying Ms. McCray's request to conduct discovery into the motivations of the defendant agencies and their employees during the budgetary process, because those inquiries were not relevant to whether immunity applied. Finally, Ms. McCray neither presented to the EEOC for investigation nor alleged in her complaint the allegations that appear at page 29 of her brief regarding the defendants' failure to rehire her, and, thus, these allegations are not properly before this Court.  *Bryant v. Bell Atl., Inc*., 288 F.3d 124, 132 (4th Cir. 2002).

## ARGUMENT

### I.    STANDARD OF REVIEW

This Court reviews *de novo* the district court's rulings on summary judgment.  *Norfolk S. Ry. Co. v. City of Alexandria*, 608 F.3d 150, 156 (4th Cir. 2010).  In conducting this review, the Court "consider[s] the facts in the light most favorable to the non-moving party," *Monumental Paving & Excavating, Inc. v. Pennsylvania Mfrs. Ass'n Ins. Co.*, 176 F.3d 794, 797 (4th Cir. 1999), by "resolving all doubts and inferences in favor of the non-moving party." *Bacon v.*

*City of Richmond*, 475 F.3d 633, 637-38 (4th Cir. 2007) (citation omitted). This Court may "affirm the [district] court's judgment on alternate grounds, if such grounds are apparent from the record." *MM. ex rel. DM v. School Dist. of Greenville County*, 303 F.3d 523, 536 (4th Cir. 2002).

A district court's denial of a request for discovery under Rule 56(d) is reviewed for abuse of discretion. *Ingle v. Yelton*, 439 F.3d 191, 195 (4th Cir. 2006).

## II. THE DISTRICT COURT PROPERLY GRANTED SUMMARY JUDGMENT ON LEGISLATIVE IMMUNITY GROUNDS BECAUSE DEFENDANTS WERE ACTING IN A LEGISLATIVE CAPACITY THROUGH THEIR INVOLVEMENT IN THE FISCAL YEAR 2009 BUDGET PROCESS.

The district court correctly concluded that the fiscal year 2009 budget cuts proposed by the Governor and approved by the Board, which eliminated funding for hundreds of State government positions, including the one occupied by Ms. McCray, constituted legislative activity, and that, therefore, legislative immunity precluded this suit against participants in that budgetmaking process.

The law is well-established that "[a]bsolute legislative immunity attaches to all actions taken 'in the sphere of legitimate legislative activity.'" *Bogan v. Scott-Harris*, 523 U.S. 44, 54 (1998) (quoting *Tenney v. Brandhove*, 341 U.S. 367, 372 (1951)). Both the Supreme Court and this Court have held that budgetmaking is a legislative activity. *See id.* at 55-56 (characterizing budgetary actions as legislative

12

in nature); *Kensington*, 684 F.3d at 471 (same).  The legislative immunity doctrine also "acts to immunize legislators from having to testify regarding conduct in their legislative capacity."  *Baker v. Mayor and City Council of Baltimore*, 894 F.2d 679, 682 (4th Cir. 1990), *overruled on other grounds by Berkley v. Common Council of the City of Charleston*, 63 F.3d 295, 303 (4th Cir. 1995) (en banc). Thus, even where a suit does not name legislators as parties, legislative immunity has been held to require dismissal of the action if either the presentation of plaintiff's case or the defense against those claims would require witnesses to "testify regarding conduct in their legislative capacity" or to "testify as to their motives. . . ."  *Schlitz v. Virginia*, 854 F.2d 43, 45, 46 (4th Cir. 1988), *followed by Baker*, 894 F.2d at 682.[2]

This doctrine immunizes not only legislators, but also extends to protect "officials outside the legislative branch . . . when they perform legislative functions" or when their actions constitute "integral steps in the legislative process."  *Id.* at 55 (citing *Supreme Court of Virginia v. Consumers Union, Inc.*,

---

[2] As the district court noted (J.A. 111 n.14), both *Schlitz* and *Baker* were partially overruled by *Berkley*, 63 F.3d 295, to the limited extent that they could "be read to confer legislative immunity on municipalities from suits brought under section 1983. . . ."  *Id.* at 303; *see also Butnick v. McLean*, 76 F.3d 611, 613 n.* (4th Cir. 1996) (explaining that "*Berkley* only overruled *Baker's* holding that municipalities enjoyed legislative immunity").    That partial overruling with respect to municipalities does not affect the application of *Schlitz* and *Baker* in this case, which involves the invocation of legislative immunity to bar a suit challenging an act of State government where the defendants are State agencies.

446 U.S. 719, 731-34 (1980)); *see also EEOC v. Washington Suburban Sanitary Comm'n*, 631 F.3d 174, 181 (4th Cir. 2011) (recognizing that legislative immunity "covers all those properly acting in a legislative capacity, not just actual officeholders"). Legislative immunity attaches even when the legislative activity allegedly was based on improper or illegal motives. *See, e.g.*, *Bogan*, 523 U.S. at 54-55 (holding that mayor who proposed budget measure that eliminated an employee's position was entitled to legislative immunity from suit alleging racial discrimination and retaliation for the exercise of First Amendment rights). Where legislative immunity does apply, it prevents any inquiry into the motives of those involved in the legislative activity. *See id.* at 55 ("[I]t simply is "not consonant with our scheme of government for a court to inquire into the motives of legislators." (citation omitted)).

The extension of the legislative immunity doctrine to those outside the legislative branch makes sense given the important policies underlying legislative immunity. Just as legislators must be "immune from deterrents to the uninhibited discharge of their legislative duty, not for their private indulgence but for the public good," so must others acting in a legislative capacity. *Tenney*, 341 U.S. at 377. "The privilege would be of little value" if those taking legislative action "could be subjected to the cost and inconvenience and distractions of a trial . . . or to the hazard of a judgment against them based upon a jury's speculation as to

14

motives." *Id.* Thus, "[w]hether an act is legislative turns on the nature of the act, rather than on the motive or intent of the official performing it." *Bogan*, 523 U.S. at 54; *see id.* at 55 (framing legislative immunity inquiry as "whether, stripped of all considerations of intent and motive, [officials'] actions were legislative").

Applying these precedents, the district court properly concluded that the fiscal year 2009 budget cuts, which were proposed by the Governor and approved by formal vote of the Board, were legislative acts protected by immunity. The budget measure bore the hallmarks of legislative activity entitled to immunity under this Court's precedent because it both (1) "involve[d] the adoption of prospective, legislative-type rules . . . that establish a general policy affecting the larger population," and (2) exhibited "the outward marks of public decisionmaking, including the observance of formal legislative procedures." *Kensington*, 684 F.3d at 470-71 (quoting *Washington Suburban*, 631 F.3d at 184).

The fiscal year 2009 budget cuts eliminated 830 State positions. The Supreme Court has held that the government's elimination of even a single position through the budget process qualifies as a legislative act, both formally and substantively. *Bogan*, 523 U.S. at 56; *see Baker*, 894 F.2d at 682 (stating that the elimination of a government position "is a uniquely legislative function"). The elimination of a position constitutes a legislative act because, "unlike the hiring or firing of a particular employee," cancelling a position entirely "may have

15

prospective implications that reach well beyond the particular occupant of the office." *Bogan*, 523 U.S. at 56. Following these precedents, this Court has applied legislative immunity to executive officials' "actions associated with the budgetmaking process" that resulted in the elimination of government positions. *Kensington*, 684 F.3d at 471. In this case, the Governor, in consultation with State agencies, proposed the budget-cutting measure and the Board approved it in accordance with their statutory authority under State Finance & Procurement § 7-213(a). As Maryland's highest court has held, the steps involved in the exercise of this authority under § 7-213(a) constitute "legislative-type acts" that carry the force of law. *Workers' Compensation Comm'n v. Driver*, 336 Md. 105, 123 (1994) (elimination of jobs through budget reduction under § 7-213(a) constituted "legislative-type acts"); *see Judy v. Schaefer*, 331 Md. at 266 (holding that budget reduction by the Governor and Board of Public Works under State Finance & Procurement § 7-213(a) "obviously was quasi-legislative in nature").

Ms. McCray does not dispute that her position was eliminated by the budgetary action of the Governor and the Board, nor does she dispute that this was a valid act that was legislative in character.[3] Instead, she challenges the district

---

[3] Because Ms. McCray has not challenged the facial validity of the fiscal year 2009 budget cuts that eliminated the position she occupied, she can make no claim for injunctive relief. *See Kensington*, 684 F.3d at 468 (holding that when confronted with a facially valid budgetary enactment, *United States v. O'Brien*, 391 U.S. 367,

court's holding that the defendants—MDOT and MTA—can invoke legislative immunity. She contends that legislative immunity is unavailable because her second-level supervisor, Mr. Deets, was not acting in a legislative capacity when he and other State officials engaged in budgetary discussions and decisions about which job functions to recommend for elimination. (*See* Appellant's Br. at 18-19.)

On the contrary, the district court correctly concluded that MDOT and MTA officials were acting in a legislative capacity when they recommended to the Governor which job functions could be eliminated through the fiscal year 2009 budget cuts in order to help balance the State's transportation fund. (J.A. 126.) Under *Kensington*, executive branch officials are entitled to legislative immunity when they "have been sued based on their actions associated with the budgetmaking process," such as "proposing, submitting, and advocating for a budget." 684 F.3d at 471.

Here, the MTA and MDOT have been sued for their actions associated with the fiscal year 2009 budget process. It is undisputed that the Governor sought proposed budget reductions from State agencies in order to address the State's projected budget shortfall. It is further undisputed that the defendants' proposed elimination of a number of State positions, including the one occupied by Ms. McCray, was submitted for the Governor's consideration and, ultimately, the

---

383 (1968) "instructs that we not strike it down 'on the basis of an alleged illicit legislative motive'").

17

Board's approval. As described by the district court, the MDOT and MTA officials' recommendations "involved the same exercise of discretion as the Governor and the Board, and were undertaken in direct assistance of formulating and passing budget cuts." (J.A. 126.) Because the defendants' recommendations were "integral steps in the legislative process," their role in the legislative process and their motives for making their recommendations are beyond the scope of judicial scrutiny. *Bogan*, 523 U.S. at 55; *see also Bryant v. Jones*, 575 F.3d 1281, 1307 (11th Cir. 2009) (holding that assistant to county executive was entitled to legislative immunity for his role in "preparing and drafting" budget proposal that eliminated plaintiff's position, despite plaintiff's suggestion that the assistant harbored "an improper motive"); *Baraka v. McGreevey*, 481 F.3d 187, 199-200 (3d Cir. 2007) (holding that State officials were entitled to legislative immunity for their "substantively legislative" actions of recommending legislation that eliminated plaintiff's position despite plaintiff's claims that these actions were in retaliation for his speech, because "intent and motive are immaterial to whether certain acts are entitled to legislative immunity").

Further, as the district court concluded, when "an employee's job position is eliminated by operation of a budget cut, the employee may not evade legislative immunity by invoking discriminatory animus on the part of individuals who merely recommended elimination of the position." (J.A. 122.) *See Baker*, 894

18

F.2d at 681-82 (focusing legislative immunity inquiry on final decisionmaker, rather than lower-level official who initially recommended eliminating plaintiff's position). That is, legislative immunity is implicated by the ultimate legislative decision of the officer or body that is "the 'real authority and power' in the budget process," *id*. at 681—here, the Governor and the Board—and that protection serves to prevent inquiry into the conduct and motives of other participants who contributed to the legislative process. Were it not for this protection afforded by legislative immunity, agency officials would risk personal liability any time they recommended, at the behest of the Governor, the elimination of a job function during a fiscal crisis. The threat of such liability would create a perverse incentive for the Governor and the Board to act without first seeking input from those State officials best able to determine which cuts would least impact State services.

Emphasizing the "practical import" of legislative immunity, this Court has deemed decisions concerning "the size, structure, and staffing of the executive and administrative bodies" to be among the "toughest" faced by those acting in a legislative capacity. *Washington Suburban*, 631 F.3d at 181. To protect the decision makers' ability to make these toughest of decisions and, thereby, to benefit the public they serve, legislative immunity provides "the breathing room necessary to make these choices in the public's interest in a way '[un]inhibited by judicial interference [and] [un]distorted by the fear of personal liability.'"

19

*Washington Suburban*, 631 F.3d at 181 (quoting *Bogan*, 523 U.S. at 52; brackets in original). It would be contrary to these established principles to force a State official or an arm of the State to defend a *recommendation* to abolish a single job among the 830 State positions eliminated, during a time of fiscal crisis. Imposing such a burden on participants in the budget cutting process is especially unwarranted in this case where, according to Ms. McCray's own description in the complaint, the occupant of the lone position at issue was "without significant work to perform" at the time her position was abolished. (J.A. 10.)

Moreover, because the defendant State agencies' recommendations did not bind the final decision makers, *see Driver*, 336 Md. at 119, any inquiry into the role those recommendations played in the final decision to eliminate a position inevitably would tread on conduct clearly protected by legislative immunity, i.e., the intent of the Governor in proposing the elimination and the intent of the Board in voting for it. "[T]his eventuality triggers the immunity protection," *Baker,* 894 F.2d at 682 (citing *Schlitz*, 854 F.2d at 45), which applies even though neither the Governor nor the Board is a defendant in this action. *See Washington Suburban*, 631 F.3d at 181 ("Because litigation's costs do not fall on named parties alone, this privilege applies whether or not the legislators themselves have been sued") (citing *MINPECO, S.A. v. Conticommodity Servs., Inc.*, 844 F.2d 856, 859 (D.C. Cir. 1988) ("A litigant does not have to name members or their staffs as parties to a suit

in order to distract them from their legislative work. Discovery procedures can prove just as intrusive.")).  Because the motivations of decision makers are central to Ms. McCray's claims, "legislative immunity bars this action."  *Schlitz*, 854 F.2d at 46.

For these and other reasons, the plaintiff cannot salvage her claims by relying on *Staub v. Proctor Hospital*, 131 S. Ct. 1186, 1194 (2011), a case that involved a termination of a specific employee's employment, rather than the elimination of a job position, and had no relation to the legislative immunity doctrine.  In *Staub*, the Supreme Court held that under the Uniformed Services Employment and Reemployment Rights Act, an employer can be held liable for the unlawful animus of a subordinate employee if the subordinate proximately caused an adverse employment action.  According to Ms. McCray, because Mr. Deets recommended her position for elimination due to allegedly discriminatory reasons, her employer is liable under this so-called "cat's paw" theory of liability.  This argument assumes, as it must, that MDOT and MTA officials were not acting in a legislative capacity (*see* Appellant's Br. at 19); however, as explained above, their connection to the budget making process entitles them to legislative immunity.

Moreover, irrespective of whether the acts taken by Mr. Deets himself would alone suffice to support invocation of legislative immunity, judicial inquiry into the proximate cause of the position's elimination inevitably would reach the highest

level of decision-making and unquestionably would trigger legislative immunity protections. As the district court reasoned, "[i]f a 'cat's paw' theory constituted an exception to legislative immunity, thereby subjecting legislators to suit for the biases held by their subordinates, even the purest legislators could not avoid liability for the 'uninhibited discharge of their legislative duty.'" (J.A. 128 (quoting *Tenney*, 341 U.S. at 377).)

Finally, in an argument that was not preserved for appeal, Ms. McCray also contends that legislative immunity does not prevent her from suing MDOT and MTA for their allegedly discriminatory failure to rehire her (*see* Appellant's Br. at 29), a claim that she did not assert at any time prior to filing her brief in this Court. Because Ms. McCray failed to file with the EEOC any charge related to this claim (*see* J.A. 60), she failed to exhaust her administrative remedies and has no standing to bring this claim in federal court. *See Bryant v. Bell Atl.*, 288 F.3d at 132 ("Before a plaintiff has standing to file suit under Title VII, he must exhaust his administrative remedies by filing a charge with the EEOC."). Ms. McCray also failed to include any such claim in her complaint in the district court (J.A. 5-17), and this Court has "repeatedly held that issues raised for the first time on appeal generally will not be considered." *Karpel v. Inova Health Sys. Servs.*, 134 F.3d 1222, 1227 (4th Cir. 1998).

The district court properly granted summary judgment on legislative immunity grounds.

### III. THE DISTRICT COURT ACTED WITHIN ITS DISCRETION IN GRANTING SUMMARY JUDGMENT ON LEGISLATIVE IMMUNITY GROUNDS WITHOUT PERMITTING FURTHER DISCOVERY.

The district court acted well within its discretion when it proceeded to enter summary judgment upon concluding that Ms. McCray failed to demonstrate that the facts she sought to pursue through discovery were "essential" to her opposition to the motion for summary judgment. Fed. R. Civ. P. 56(d). In so ruling, the district court proceeded in a manner that has been approved in prior appellate decisions involving legislative immunity.

This Court's precedent clearly establishes the appropriateness of invoking legislative immunity to dismiss a case or grant summary judgment at an early juncture, even before any discovery has been conducted. In *Kensington*, for example, the defendant local government and officials responded to the filing of the complaint by removing to federal court and promptly filing a motion to dismiss or, in the alternative, motion for summary judgment. 684 F.3d at 467. The district court elected to treat it as a motion to dismiss, granted dismissal on grounds that included legislative immunity, and this Court affirmed the dismissal. *Id.* at 467, 465, 473. In *Schlitz*, the defendant Commonwealth of Virginia similarly responded to the complaint by filing a motion to dismiss or for summary judgment asserting

23

legislative immunity.  854 F.2d at 43.  After the district court denied the motion, the state defendant took an immediate appeal and this Court "reverse[d] and remand[ed] the case with direction to enter summary judgment for the Commonwealth" on the ground that "the doctrine of legislative immunity bars this action."  *Id.* at 44, 46.  *See also Baker*, 894 F.2d at 680 (affirming entry of summary judgment for local government defendants on the ground that "legislative immunity is a complete defense").

Contrary to Ms. McCray's insistence, the much different case of *Washington Suburban* does not support her contention that the district court acted prematurely in granting summary judgment on the basis of legislative immunity.  There, this Court was considering whether Washington Suburban had to comply with an EEOC subpoena when "the EEOC [was] only in the early stages of [an age discrimination] investigation"; "it [was] simply unknown whether the EEOC's investigation [would] ripen into a lawsuit"; and the EEOC was not seeking information about the purported legislative activity itself (a staff restructuring that eliminated the complainant's position) but was instead inquiring into employment actions that occurred before and after the purported legislative activity.  631 F.3d at 182, 183-84.  Here, to the contrary, the EEOC has completed its investigation, and the appellant's case is a "full-blown lawsuit[]," *see id.* at 182-83, which chiefly

24

involves a legislative act:  the fiscal year 2009 budget cuts that eliminated the position she occupied.

In her brief, Ms. McCray asserts a need for additional discovery to identify which criteria were used to identify positions for potential elimination, what role her supervisor played in the budgetary process, and which individuals obtained other employment with the State.   (Appellant's Br. at 28).   None of this information, however, is relevant to the issue of legislative immunity and, thus, its discovery would not create a genuine issue of fact for trial.

The district court, relying on *Bogan*, correctly concluded that an alleged discriminatory animus on the part of the plaintiff's supervisors or other agency officials is not relevant to the legislative immunity inquiry.  (J.A. 122.)  In *Bogan*, the Supreme Court held that it was error for a court to probe "subjective intent in resolving the logically prior question of whether [defendants'] acts were legislative" and, therefore, subject to legislative immunity.   523 U.S. at 54. Accordingly, once the district court affirmatively answered the "logically prior" question whether defendants could invoke absolute legislative immunity based on their conduct associated with the budget process, the subjective intentions of officials involved in the process became irrelevant.  *Id.*  On appeal, Ms. McCray does not dispute the material facts regarding the conduct of the defendant State agencies and their officials; rather, she disputes only the legal relevance of that

25

conduct.  Under these circumstances, the district court did not abuse its discretion by denying the plaintiff's request for additional discovery and proceeding to grant the defendants' motion for summary judgment.  *See Strag v. Board of Trs.*, 55 F.3d 943, 954 (4th Cir. 1995) (affirming district court's denial of additional time for discovery "where the additional evidence sought for discovery would not have by itself created a genuine issue of material fact to defeat summary judgment").

## IV.  SOVEREIGN IMMUNITY BARS THE PLAINTIFF'S AGE AND DISABILITY DISCRIMINATION CLAIMS.

If the Court determines to exercise its discretion to address alternate grounds for affirmance, *MM. ex rel. DM v. School Dist. of Greenville County*, 303 F.3d at 536, the defendant State agencies are also entitled to summary judgment because the plaintiff's ADA and ADEA claims are barred by sovereign immunity.  Under the Eleventh Amendment, "[a]n unconsenting State is immune from suits brought in federal courts," and this protection extends to "'state agents and state instrumentalities' as well as the States themselves."  *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 479 (4th Cir. 2005) (quoting *Regents of Univ. of California v. Doe*, 519 U.S. 425, 429 (1997)) (internal quotation marks and citation omitted).  Thus, MDOT and MTA, as agencies of the State of Maryland, are immune from suit under federal law to the same extent that the State would be immune.  *Id.*; *see Thompson v. Maryland Dep't of Transp.*, No.

09-297, 2010 U.S. Dist. LEXIS 58268 at *9 (D. Md. 2010) (identifying "the Maryland Department of Transportation" as "an agency in the State of Maryland entitled to [sovereign] immunity"). The State and agencies of the State may assert Eleventh Amendment immunity at any stage in the litigation, including for the first time on appeal. *See Constantine*, 411 F.3d at 481.

Controlling precedent makes clear that employment discrimination claims under the ADA and ADEA cannot overcome the States' Eleventh Amendment immunity. In *Board of Trustees of the University of Alabama v. Garrett*, 531 U.S. 356, 368-74 (2001), the Supreme Court held that, in prohibiting discrimination in employment on the basis of disability in Title I of the ADA, Congress did not validly abrogate the states' sovereign immunity. Thus, under *Garrett*, sovereign immunity bars Ms. McCray's ADA claims. *See id*. Similarly, in *Kimel v. Florida Board of Regents*, 528 U.S. 62, 67 (2000), the Supreme Court held that the ADEA's provision purporting to abrogate the states' sovereign immunity "exceeded Congress' authority under § 5 of the Fourteenth Amendment." Therefore, the plaintiff's ADA and ADEA claims are barred by sovereign immunity.

## V. THE PLAINTIFF'S CLAIMS CANNOT SURVIVE SUMMARY JUDGMENT BECAUSE SHE CANNOT SHOW THAT THE FISCAL YEAR 2009 BUDGET CUTS WERE MERE PRETEXT FOR DISCRIMINATION.

As to the merits of the plaintiff's claims, her own allegations and contentions demonstrate that she is unable to establish her claims of employment discrimination. Ms. McCray does not dispute that the State position she occupied was eliminated by the fiscal year 2009 budget cuts, which abolished 830 State positions and were designed to reduce significantly the State's budget gap of more than $430 million. Rather, she alleges that defendants' employee, Mr. Deets, targeted her position for elimination because he harbored discriminatory animus against her. Other than self-serving conclusions that cannot serve to elevate her claims "above the speculative level," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), the plaintiff's complaint alleges only that Mr. Deets "harassed" her by inquiring into her health and fitness for duty after she collapsed at work and required hospitalization, and that he subsequently was involved in transferring her principal job functions to a consultant. (J.A. 9-10.) Even if these allegations could be generously construed to state a "plausible entitlement to relief" under the anti-discrimination statutes, *id.* at 559, they cannot generate the genuine dispute of material fact necessary to withstand summary judgment.

Under the burden-shifting evidentiary framework the Supreme Court adopted in *McDonnell-Douglas v. Green*, 411 U.S. 792, 802 (1973), Ms. McCray

28

is unable to make out her prima facie case. Given that the State position she occupied was eliminated in the course of extensive budget cuts and that she admittedly was "without significant work to perform" (J.A. 10), she cannot show that the elimination of her position "occurred under circumstances that raise a reasonable inference of unlawful discrimination." *See Ennis v. National Ass'n of Bus. & Educ. Radio, Inc.*, 53 F.3d 55, 58 (4th Cir. 1995). Even if Ms. McCray could make out her prima facie case, the defendants offered a legitimate nondiscriminatory reason for the elimination of her position: the extensive fiscal year 2009 budget cuts enacted to reduce the State's large budget gap. *See Henson v. Liggett Group, Inc.*, 61 F.3d 270, 274-75 (4th Cir. 1995) (noting that the defendant need only offer a "legitimate nondiscriminatory explanation[] for the allegedly discriminatory acts" to shift the burden of proof to the plaintiff). In light of Ms. McCray's admission that she was without work to perform at the time her position was eliminated in the midst of a State fiscal crisis, she cannot carry her burden of proof to show that the defendants' rationale was mere pretext for discrimination. *See id.* Accordingly, her claims cannot survive summary judgment, and this Court should affirm the judgment of the district court.

29

## CONCLUSION

For the reasons stated, the Court should affirm the judgment of the United States District Court for the District of Maryland.

Respectfully submitted,

DOUGLAS F. GANSLER
Attorney General of Maryland

s/ Jennifer L. Katz

| | |
|---|---|
| ERIC S. HARTWIG | JENNIFER L. KATZ |
| Assistant Attorney General | Assistant Attorney General |
| Offices of the Attorney General | Office of the Attorney General |
| Maryland Transit Administration | 200 Saint Paul Place, 20th Floor |
| 6 Saint Paul Street, 12th floor | Baltimore, Maryland 21202 |
| Baltimore, Maryland 21202 | jkatz@oag.state.md.us |
| ehartwig@mta.maryland.gov | (410) 576-7005 |
| (410) 767-6616 | |
| | Attorneys for Defendants-Appellees |
| July 12, 2013 | |

# UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

No. 13-1215    **Caption:** Marie McCray v. Maryland Department of Transportation

## CERTIFICATE OF COMPLIANCE WITH RULE 28.1(e) or 32(a)
Type-Volume Limitation, Typeface Requirements, and Type Style Requirements

1. **Type-Volume Limitation:** Appellant's Opening Brief, Appellee's Response Brief, and Appellant's Response/Reply Brief may not exceed 14,000 words or 1,300 lines. Appellee's Opening/Response Brief may not exceed 16,500 words or 1,500 lines. Any Reply or Amicus Brief may not exceed 7,000 words or 650 lines. Counsel may rely on the word or line count of the word processing program used to prepare the document. The word-processing program must be set to include footnotes in the count. Line count is used only with monospaced type.

   This brief complies with the  type-volume limitation of Fed. R. App. P. 28.1(e)(2) or 32(a)(7)(B) because:

   [✓]  this brief contains _____6816_____ [*state number of*] words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

   [ ]  this brief uses a monospaced typeface and contains _____ [*state number of*] lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2. **Typeface and Type Style Requirements:** A proportionally spaced typeface (such as Times New Roman) must include serifs and must be 14-point or larger.  A monospaced typeface (such as Courier New) must be 12-point or larger (at least 10½ characters per inch).

   This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

   [✓]  this brief has been prepared in a proportionally spaced typeface using
   Microsoft Word_____ [*identify word processing program*] in
   14 pt, Times New Roman_____ [*identify font size and type style*]; **or**

   [ ]  this brief has been prepared in a monospaced typeface using
   _____ [*identify word processing program*] in
   _____ [*identify font size and type style*].

(s) Jennifer L. Katz_____

Attorney for Appellees_____

Dated: July 12, 2013_____

## ADDENDUM OF PERTINENT PROVISIONS

### Md. Code Ann., Transp. § 2-101 -- Department established

There is a Department of Transportation, established as a principal department of the State government.

### Md. Code Ann., Transp. § 2-107 -- Units in Department

(a) Units enumerated. -- The following units are in the Department:

(1) Maryland Aviation Administration;

(2) Maryland Port Administration;

(3) Maryland Transit Administration;

(4) State Highway Administration;

(5) Motor Vehicle Administration;

(6) Board of Airport Zoning Appeals;

(7) State Roads Commission;

(8) Transportation Professional Services Selection Board; and

(9) Maryland Transportation Commission.

(b) Other units. -- The Department also includes any other unit that, in accordance with law, is declared to be in the Department.

### Md. Code Ann., Transp. § 7-204 -- General powers of Administration

(a) In general. -- In addition to the specific powers granted under this title, the Administration has the powers granted by this section.

(b) Suits. -- The Administration may sue and be sued in its own name.

(c) Rules and regulations. -- The Administration may adopt rules and regulations to carry out the provisions of this title.

(d) Acquisition and disposition of property. -- If necessary or useful in rendering transit service or railroad service or incidental activities, the Administration may:

(1) Construct, acquire, own, operate, maintain, and control any interest in any property, whether by contract, purchase, condemnation, lease as lessor or lessee, license, gift, mortgage, or otherwise; and

(2) If the property is no longer required for the purposes of the Administration, sell, convey, or otherwise dispose of it.

(e) Grants, loans, advances, and other funds. -- The Administration may apply for and receive grants, gifts, payments, loans, advances, and other funds, appropriations, properties, and services from the federal government, this State, any of their agencies or political subdivisions, or any other public or private person and may enter into agreements for them and for any studies, plans, demonstrations, or projects.

(f) Contracts for providing transit facilities and services. -- The Administration may contract with this State or any of its agencies or political subdivisions for providing transit facilities and transit services, including service in any county contiguous to the District, and for any other purposes incidental to the establishment, financing, and operation of the regional transportation system.

(g) Contracts for providing passenger and freight railroad services. -- The Administration may enter into and manage contracts with railroad companies to provide passenger and freight railroad services.

(h) Joint use of property. -- The Administration may contract with any public utility, railroad company, transportation company, or private carrier for the joint use of property or rights.

(i) Planning, technical, and consultant services. -- The Administration may contract for planning, engineering, and technical services and may contract for or employ consultants, engineers, attorneys, and other professional, planning, engineering, and technical services.

(j) Contracts necessary to perform duties and exercise powers. -- The Administration may make any contract necessary for or incidental to the performance of its duties and the exercise of its powers under this title.

(k) Development and coordination of policies and plans. -- The Administration shall develop and coordinate policies and plans for the preservation, improvement, or provision of railroad facilities and railroad services.

(l) Project planning and preliminary engineering. -- The Administration shall conduct project planning and preliminary engineering related to railroad facilities.

(m) Supervision of construction. -- The Administration shall supervise construction of State-owned or financed railroad facilities and related capital improvements performed under contract with the Administration.

(n) Supervision of maintenance and rehabilitation. -- The Administration shall supervise the maintenance and rehabilitation of State-owned or financed railroad facilities and equipment.

(o) Compliance with § 8-639 of this article. -- The Administration shall advise the Secretary on matters concerning compliance with § 8-639 of this article.

(p) Monitoring of railroad passenger and freight services. -- The Administration shall monitor railroad passenger and freight services to assure maximum benefits to Maryland communities and business.

(q) Other powers. -- Subject to the limitations imposed by this title, the Administration may exercise all powers reasonably necessary to the declared objects and purposes of this title.


## Md. Code Ann., State. Fin. & Proc. § 2-13 -- Reductions

(a) Authorized. -- Except as provided in subsection (b) of this section, with the approval of the Board of Public Works, the Governor may reduce, by not more than 25%, any appropriation:

(1) that the Governor considers unnecessary; or

(2) that is subject to budgetary reductions required under the budget bill as approved by the General Assembly.

(b) Exclusions. --

(1) The Governor may not reduce an appropriation to the Legislative Branch or the Judicial Branch of the State government.

(2) The Governor may not reduce an appropriation for:

(i) payment of the principal of or interest on the State debt;

(ii) public schools, including the Maryland School for the Deaf;

(iii) the Maryland School for the Blind; or

(iv) the salary of a public officer, during the term of office.

(3) Except as provided in § 8-109 of the State Personnel and Pensions Article, the Governor may not reduce an appropriation for the salary of any nontemporary employee in the State Personnel Management System.


**Md. Const. art. XII**

**Section 1.  Board of Public Works established; members; journal; sessions**

The Governor, the Comptroller of the Treasury and the Treasurer, shall constitute the Board of Public Works in this State. They shall keep a journal of their proceedings, and shall hold regular sessions in the City of Annapolis, on the first Wednesday in January, April, July and October, in each year, and oftener, if necessary; at which sessions they shall hear and determine such matters as affect the Public Works of the State, and as the General Assembly may confer upon them the power to decide.

**Section 2.  Powers and duties of Board of Public Works; members to receive no additional salary**

They shall exercise a diligent and faithful supervision of all Public Works in which the State may be interested as Stockholder or Creditor, and shall appoint the

Directors in every Railroad and Canal Company, in which the State has the legal power to appoint Directors, which said Directors shall represent the State in all meetings of the Stockholders of the respective Companies for which they are appointed or elected. They shall require the Directors of all said Public Works to guard the public interest, and prevent the establishment of tolls which shall discriminate against the interest of the citizens or products of this State, and from time to time, and as often as there shall be any change in the rates of toll on any of the said Works, to furnish the said Board of Public Works a schedule of such modified rates of toll, and so adjust them as to promote the agricultural interests of the State; they shall report to the General Assembly at each regular session, and recommend such legislation as they may deem necessary and requisite to promote or protect the interests of the State in the said Public Works; they shall perform such other duties as may be hereafter prescribed by Law, and a majority of them shall be competent to act. The Governor, Comptroller and Treasurer shall receive no additional salary for services rendered by them as members of the Board of Public Works.

## Section 3.  Sale of State's interest in works of public improvement and banking corporations

   (a) The Board of Public Works is hereby authorized, subject to such regulations and conditions as the General Assembly may from time to time prescribe, to sell the State's interest in all works of Internal Improvement, whether as a stockholder or a creditor, and also the State's interest in any banking corporation, receiving in payment the bonds and registered debt now owing by the State, equal in amount to the price obtained for the State's said interest.

(b) The Board of Public Works may not approve the sale, transfer, exchange, grant, or other permanent disposition of any State-owned outdoor recreation, open space, conservation, preservation, forest, or park land without the express approval of the General Assembly or of a committee that the General Assembly designates by statute, resolution, or rule.

## Fed. R. Civ. P. 56  -- Summary Judgment

(a) Motion for Summary Judgment or Partial Summary Judgment. A party may move for summary judgment, identifying each claim or defense - or the part of each claim or defense--on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to

any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion.

(b) Time to File a Motion. Unless a different time is set by local rule or the court orders otherwise, a party may file a motion for summary judgment at any time until 30 days after the close of all discovery.

(c) Procedures.
   (1) Supporting Factual Positions. A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
      (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
      (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.
   (2) Objection That a Fact Is Not Supported by Admissible Evidence. A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.
   (3) Materials Not Cited. The court need consider only the cited materials, but it may consider other materials in the record.
   (4) Affidavits or Declarations. An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

(d) When Facts Are Unavailable to the Nonmovant. If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:
   (1) defer considering the motion or deny it;
   (2) allow time to obtain affidavits or declarations or to take discovery; or
   (3) issue any other appropriate order.

(e) Failing to Properly Support or Address a Fact. If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may:
   (1) give an opportunity to properly support or address the fact;
   (2) consider the fact undisputed for purposes of the motion;

6

(3) grant summary judgment if the motion and supporting materials--including the facts considered undisputed--show that the movant is entitled to it; or

(4) issue any other appropriate order.

(f) Judgment Independent of the Motion. After giving notice and a reasonable time to respond, the court may:

(1) grant summary judgment for a nonmovant;

(2) grant the motion on grounds not raised by a party; or

(3) consider summary judgment on its own after identifying for the parties material facts that may not be genuinely in dispute.

(g) Failing to Grant All the Requested Relief. If the court does not grant all the relief requested by the motion, it may enter an order stating any material fact--including an item of damages or other relief--that is not genuinely in dispute and treating the fact as established in the case.

(h) Affidavit or Declaration Submitted in Bad Faith. If satisfied that an affidavit or declaration under this rule is submitted in bad faith or solely for delay, the court--after notice and a reasonable time to respond--may order the submitting party to pay the other party the reasonable expenses, including attorney's fees, it incurred as a result. An offending party or attorney may also be held in contempt or subjected to other appropriate sanctions.

# CERTIFICATE OF SERVICE

I certify that on __July 12, 2013____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

/s Jennifer L. Katz

_____

Signature

July 12, 2013

_____

Date